IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| CBSUB, LLC, and CertusHoldings, Inc., | ) CA No. 6:18-cv-00390-AMQ |
| Plaintiffs, | ) |
| vs. | ) **ORDER AND OPINION** |
| Federal Deposit Insurance Corporation, Milton Jones, Jr., Walter Davis and Angela Webb, | ) |
| Defendants. | ) |

This matter comes before the Court pursuant to the Motion to Dismiss for Lack of Subject Matter Jurisdiction of Defendants Milton Jones, Jr., Walter Davis and Angela Webb ("Former Executives"). (ECF No. 6) The Motion relates to a Complaint filed by CBSUB, LLC ("CBSUB") and Certus Holdings, Inc. ("Certus Holdings") (collectively "Plaintiffs"). (ECF No. 1) In their Complaint, Plaintiffs asserted a claim under the Declaratory Judgment Act, 28 U.S.C. § 2201, and a claim under the Administrative Procedures Act ("APA"), 5 U.S.C. § 701. (ECF No. 1) Both claims seek a declaration about whether severance payments to the Former Executives described more fully below are "golden parachute" payments under 12 C.F.R. 359.1(f) and 359.2 and whether the actions taken by Defendant Federal Deposit Insurance Corporation ("FDIC") with respect to such severance payments, and particularly the issuance of determination letters about the payments, were proper. *Id*. For the reasons set forth below, the Motion to Dismiss (ECF No. 6) of the Former Executives is denied.

## BACKGROUND AND PROCEDURAL HISTORY

This Motion, while made early in this case, must be considered in the context of a long factual and procedural history relating to the broader dispute among the parties. The dispute

1

arises from the formation and brief operation of a bank known as CertusBank ("Certus"). Certus began operations in January of 2011. (ECF No. 1 at 3) On February 22, 2011, Certus and the Former Executives executed employment agreements with severance provisions in the event the Former Executives were terminated. *Id*.

In late 2013, after two years of financial losses, Certus became what is known as a "troubled" institution under 18 U.S.C. § 303.101(c). *Id*. at 4. According to the Complaint, several months later, on April 9, 2014, the Former Executives were terminated without cause. *Id*. In November 2014, a consent order was entered allowing for assets of Certus to be sold. *Id*. In May 2015, some of the assets of Certus were sold. *Id*. In June 2015, the remaining assets were sold. *Id*.

On September 9, 2015, the Former Executives sued Certus and Certus Holdings in the Court of Common Pleas for Greenville County, South Carolina ("State Court Action") seeking to recover severance payments they claimed were due and owing under their respective employment agreements. *Id*. On October 23, 2015, the FDIC terminated the insured status of Certus. *Id*. at 5. On November 6, 2015, Certus surrendered its FDIC charter. *Id*. at 5. That same month, CBSUB, LLC was chartered. *Id*.

Plaintiffs and the Former Executives disagree about whether Certus merged into CBSUB. (ECF Nos. 1 at 5 and 6 at 6.) However, it appears undisputed that CBSUB became chartered although it did not become FDIC insured. (ECF No. 1 at 5.)

On January 6, 2016, the parties in the State Court Action agreed to arbitration. (ECF No. 1 at 5.) On March 29, 2017, an arbitration award was entered as a judgment in the State Court Action. *Id*. at 6. The award held that under the employment agreements, the Former Executives were entitled to severance payments totaling $965,000 collectively. *Id*. at 5-6. The award,

however, expressly offered no opinion or finding about whether the payments were legal or not under the "golden parachutes" regulations. *Id*. at 5.

Soon after the agreement to arbitration, on April 21, 2016, Certus sought a ruling from the FDIC as to whether the severance payments to the Former Executives were considered "golden parachutes." *Id*. On April 7, 2017, after the arbitration award, the FDIC issued determination letters that prohibited Certus Holdings or CBSUB from making the severance payments and finding that such payments would be "golden parachutes" subject to approval of the Office of the Comptroller of the Currency and Federal Reserve Bank with the concurrence of the FDIC. The letters did not provide prior approval for the payments. *Id*. at 5-6.

On April 13, 2017, Certus Holdings and CBSUB filed a Motion for a Protective Order in the State Court Action allowing it to file the FDIC determination letters. (ECF No. 1-4 at 2.) On May 23, 2017, the FDIC moved to intervene in the State Court Action as well as to modify and render unenforceable the judgment based on the March 29, 2017 arbitration award because of the April 7, 2017 FDIC determination letters. *Id*. at 2 On May 26, 2017, the Motion for protective order was denied on the basis that no appeal was taken from the March 29, 2017 judgment. *Id*. On May 30, 2017, Certus Holdings and CBSUB filed a Motion to Vacate the Judgment in the State Court Action. *Id*. On June 19, 2017, the Former Executives filed an Execution of Judgment. (ECF No. 1 at 7.) On June 28, 2017, the parties to the State Court Action filed a Joint Motion requesting the Clerk of Court to hold $965,000 in escrow pending the ruling on the Motion to Vacate. *Id*.

On January 11, 2018, the FDIC's Motion to Intervene was granted. (ECF Nos. 1-4 at 3 and 1 at 7.) The state court, however, denied its Motion to Render Judgment Unenforceable without prejudice. (ECF No. 1 at 7.) The state court also denied the Motion to Vacate Judgment

3

entered on March 29, 2017 and the Execution of Judgment entered on June 19, 2017 of Certus Holdings and CBSUB. *Id*. On February 9, 2018, Certus Holdings and CBSUB appealed the January 11, 2018 order denying the Certus' Motion to Vacate the judgment entered on March 29, 2017 and the Execution of Judgment entered on June 19, 2017. (ECF No. 6-3 at 2.)

On February 9, 2018, Certus Holdings and CBSUB filed a complaint with this Court initiating the current action by seeking action for declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 or, alternatively, seeking review of final agency actions of the FDIC under the APA. (ECF No. 1 at 1) On March 9, 2018, the Former Executives filed a Motion to Dismiss (ECF No. 6), asserting that this Court does not have jurisdiction over the subject matter of this dispute. On March 23, 2018, Certus filed a Response in Opposition (ECF No. 12) and the FDIC filed a Response in Opposition. (ECF No. 14) On March 30, 2018, the Former Executives filed a Reply. On May 5, 2018, this Court held a hearing on the Motion to Dismiss. (ECF No. 6)

On March 28, 2018, the FDIC removed the State Court Action so that it is now a separate case pending before this Court styled *Jones et al v. CertusBank, N.A*. et al, CA No. 6:18-cv-00849-AMQ.[1] Although related to the present case, the case that was removed on March 28, 2018 was assigned a separate case number and has not been consolidated with this action. *Id*.

On May 5, 2018 this Court held a hearing on the Motion to Dismiss filed in the present case by the Former Executives. (ECF No. 6.)

---

[1] The FDIC actually removed the proceedings pending in the Greenville County Court of Common Pleas, civil action number 2015-CP-23-05554, and also pending in the South Carolina Court of Appeals, civil action number 2018-000212. Although the removal papers list both state court civil action numbers, the state court trial court and appellate proceedings are referred to herein as the "State Court Action."

**STANDARD OF REVIEW**

A motion to dismiss for lack of subject matter jurisdiction filed pursuant to Federal Rule of Civil Procedure 12(b)(1) raises the fundamental question of whether a court has jurisdiction to adjudicate the matter before it. *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 514 (2006). When a defendant challenges subject matter jurisdiction, the plaintiff bears the burden of establishing it. *See Thomson v. Gaskill,* 315 U.S. 442 (1942); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

The Court of Appeals for the Fourth Circuit analyzed the legal framework for resolving a Rule 12(b)(1) motion to dismiss in *Kerns v. United States*, 585 F.3d 187 (4th Cir.2009). There, the court explained that there are two ways to present Rule 12(b)(1) motions. *Id.* at 192-193. First, a defendant may argue that a complaint fails to allege facts upon which subject matter jurisdiction can be based. *Id*. at 192. When a defendant makes a facial challenge to subject matter jurisdiction, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Id*. In that context, the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to establish subject matter jurisdiction. *Id*. Second, a defendant may argue "that the jurisdictional allegations of the complaint [are] not true." *Id*. In the latter challenge, "the presumption of truthfulness normally accorded a complaint's allegations does not apply, and the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Id*.; *see also Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765 (4th Cir. 1991). A dismissal for lack of subject matter jurisdiction is appropriate "where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and

made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Bell v. Hood*, 327 U.S. 678, 776 (1945). However, the Supreme Court has cautioned that "the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of [subject matter] jurisdiction." *Id*.

## ANALYSIS

In their Motion to Dismiss, the Former Executives assert that the Court does not have jurisdiction over the subject matter of this dispute. (ECF No. 6 at 1.) The Motion is based primarily on the contention that, at the time of its April 7, 2017 determination letters, FDIC had no legal authority to make determinations as to Certus, Certus Holdings or CBSUB. *Id*. at 9-10. Specifically, the Former Executives dispute the legal authority of the FDIC to bar "golden parachute" payments to the Former Executives. The Former Executives contend that Certus was not FDIC insured after October 23, 2015, and Certus Holdings and CBSUB were never FDIC insured. *Id*. at 13. Thus, they argue the FDIC determination letters are ultra vires. *Id*. The Former Executives claim the facts on this issue are undisputed. *Id*. at 8. Accordingly, they claim the Complaint should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. *Id*. at 16.

In Response to the Motion, Certus argues that the Motion is procedurally improper. (ECF No. 12 at 3). Certus contends that the Former Executives "invoke the jurisdiction of this Court and seek a preemptive ruling in their favor on the very claims Certus has filed (without the FDIC even having the opportunity to defend its own agency actions)." *Id*. Certus asserts that because the FDIC is a necessary and indispensable party pursuant to Rule 19 of the Federal Rules of Civil Procedure, this Court has original federal question jurisdiction under 28 U.S.C. § 1331 and 12 U.S.C. § 1819(b)(2)(A). *Id*. at 2.

The FDIC asserts in its Response (ECF No. 14) that this Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and 12 U.S.C. § 1819(b)(2)(A) because the FDIC is named as a party defendant. *Id*. at 3. FDIC argues that, contrary to the assertions of the Former Executives, subject matter jurisdiction does not turn on the legality of FDIC's agency actions. *Id*. At 4. The FDIC asserts that the issues raised by the Former Executives are more appropriately addressed at summary judgment. *Id*.

Initially, this Court, like all federal courts, are courts of limited jurisdiction. In order for the Court to exercise jurisdiction, among other things, the Court must have jurisdiction over the subject matter of the dispute. The subject matter jurisdiction of a federal district court includes "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Thus, when federal law creates the cause of action, federal courts have subject matter jurisdiction over the action. *Mulcahey v. Columbia Organic Chemicals Co.*, 29 F.3d 148, 151 (4th Cir. 1994) (citing *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 817 (1986)). It is well settled that federal subject matter jurisdiction is "not defeated by the possibility that the averments of the complaint might fail to state a cause of action" and "the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." *Bell v. Hood*, 327 U.S. 678, 776 (1945). Rather, a dismissal for want of jurisdiction is warranted where the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Bell*, 327 U.S. at 776.

The Court at this time makes no ruling on the proprietary or the legality of the FDIC's issuance of the determination letters. The Former Executives may, or may not be, correct. The Court need not, and indeed should not, reach that issue to make a decision as to whether it has

subject matter jurisdiction. *Bell*, 327 U.S. at 776. For that question, the Court turns to the text of federal law. Under 28 U.S.C. § 1331(b)(2)(A), "all suits of a civil nature at common law or in equity to which [FDIC], in any capacity, is a party shall be deemed to arise under the laws of the United State." *See, e.g. F.D.I.C. v. Prince George Corp.*, 58 F.3d 1041, 1045 (4th Cir. 1995); *Palmetto State Bank v. Riley*, No. 1:16-CV-03842-JMC, 2017 WL 4160970, at *2 (D.S.C. Sept. 19, 2017) (unpublished) ("when the FDIC is a party, the entire action is deemed to arise under the laws of the United States"); *Am. Int'l Enterprises, Inc. v. F.D.I.C.*, 3 F.3d 1263, 1267 (9th Cir. 1993) ("As the FDIC is a party to the civil suit, that suit is conclusively presumed to arise under the laws of the United States, and thus is within the original subject matter jurisdiction of the proper federal district court.").

Here, the plain text of the law establishes subject matter jurisdiction. Under 28 U.S.C.§ 1331 and 12 U.S.C. § 1819(b)(2)(A), if the FDIC is a party to the action, the action by definition is one that arises under the laws of the United States. On that basis, the Court denies the Motion to Dismiss of the Former Executives. The Court need not assess the factual basis of the Complaint in order to find that this Court has subject matter jurisdiction. Further, having determined the Court has subject matter jurisdiction under 28 U.S.C.§ 1331 and 12 U.S.C. § 1819(b)(2)(A), the Court declines to address the alternative bases under which Plaintiffs, and the FDIC, argues this Court has proper subject matter jurisdiction.[2]

It should be noted that even when a federal court has jurisdiction over a matter, it at times should abstain from exercising such jurisdiction. One of those situation is when there are state court proceedings over the same issues. This situation implicates the *Colorado River* Doctrine.

---

[2] As noted in *City Nat'l Bank v. Edmisten*, 681 F.2d 942 (4th Cir.1982), the Declaratory Judgments Act, 28 U.S.C. § 2201, is "remedial only, and is not itself a basis for federal subject matter jurisdiction." *Id.* at 945 n. 6 (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72, (1950))

*Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976); *vonRosenberg v. Lawrence*, 849 F.3d 163, 167 (4th Cir. 2017) ("under the *Colorado River* doctrine, a federal court may abstain from exercising jurisdiction over a duplicative federal action… [when] there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction") (internal citations omitted); *see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 9 (1983).

At the May 30, 2018 hearing on the Motion to Dismiss, the Court explored the status of the State Court Action and particularly the state court appellate proceedings. More specifically, the Court sought information to evaluate whether it should abstain and defer to the South Carolina state court. However, all parties agreed that, at this time, no party was seeking the remand of any removed case and consented to this Court addressing the disputes described above. Thus, abstention does not appear appropriate.

## CONCLUSION

For the reasons set forth above, it is hereby ORDERED that the Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF No. 6) filed by the Former Executives is DENIED.

IT IS SO ORDERED.

/s/ A. Marvin Quattlebaum, Jr.
United States District Judge

September 4, 2018
Greenville, South Carolina